IN THE COURT OF APPEALS OF IOWA
No. 24-0677
Filed July 24, 2024

**IN THE INTEREST OF D.M., D.G., T.G., and T.G.,**
**Minor Children,**

**L.M., Mother,**
    Appellant,

**R.G., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jason T. Carlstrom of Carlstrom Law Office, West Des Moines, for appellant mother.

Ricki L. Osborn Stubbs of Osborn Stubbs Law Office, P.C., Fort Dodge, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

The parents of four children individually appeal the termination of their parental rights. The father argues that the State failed to prove a ground for termination and that termination was not in the children's best interests, and he asks for six additional months to work toward reunification. The mother claims that the State hindered reunification and that without its recommendation, the court could not find the children could be returned. We find the State proved grounds for termination by clear and convincing evidence and that it was in the children's best interests for the court to terminate. We also refuse the father's request for six more months. Lastly, we find the mother both failed to preserve and waived her argument on appeal. Thus, we affirm on both appeals.

## I. Facts and Prior Proceedings

Leticia and Robbie[1] are the parents of four children under four years old: D.G. (born in 2021), D.M. (born in 2022), and twins, Ta.G. and Tr.G. (born in 2023).[2] The parents were never married but have been together for most of eighteen years. The family came to the attention of the Iowa Department of Health and Human Services in November 2022 when police were called to the home over concerns that Leticia had been using methamphetamine. D.G. and D.M. were then left in their father's care. A social worker visited the home the next day to conduct an assessment and Leticia admitted to being under the influence of

---

[1] These are not the parents' real names. To maintain confidentiality, we used a random name generator to produce the parents' names. *See* Iowa Ct. R. 21.25; Random Word Generator, https://perma.cc/5F53-8Q98.
[2] Leticia and Robbie have four older children not involved in this appeal. We will occasionally refer to them throughout this decision.

methamphetamine and reported that she and Robbie had been using for a while. The children were removed, and adjudicated children in need of assistance (CINA) in December 2022. Leticia was pregnant with twins at this time. At a removal hearing, D.G. and D.M. were returned home to their parents.

In the meantime, both parents struggled to stay sober. Leticia and Robbie started and dropped out of several rehabilitation programs. Robbie continued to relapse and admitted to using cocaine and methamphetamine daily in March and April 2023. Since the children were adjudicated CINA, Leticia attended both outpatient and inpatient treatment programs. But she also continued to relapse and test positive.

In May, the department conducted an assessment regarding Leticia and Robbie abusing their older children. The department worried about the safety of the younger children, so D.G. and D.M. were subsequently removed from the parents' care. Later that summer, the department allowed the children to have a trial home visit. Two months later, Leticia gave birth to the twins. At the hospital, she tested positive for amphetamines, though the newborns did not. The twins were then adjudicated CINA.

At this point, Leticia was unemployed, Robbie worked for a temporary agency, and the parents struggled financially. That same month, Leticia and Robbie were evicted from their home and moved into a shelter. They then moved into Leticia's mother's home, where Leticia was sleeping on the couch.

In September, the department removed all four children from the parents and placed them in foster care. D.M. and D.G. went to one foster family and the

twins, another.  That same month, Leticia got into a car accident.  Police believed that she was under the influence of alcohol, cocaine, and amphetamines.

In efforts to reunify the family, the department focused on "[s]tability, substance abuse, mental health, [and] housing."  Leticia and Robbie eventually moved into Robbie's sister's two-bedroom trailer.  Though the parents were more on their feet than before, it still was not adequate housing for the children.  Neither the children's maternal nor paternal grandparents had enough space, so the children could not stay there either.

In December 2023, Robbie was charged with public intoxication.  So he went back to treatment in January 2024.  But the benefits didn't last.  Robbie tended to do well in inpatient treatment but struggled each time he returned home.  Since the department last intervened, Robbie engaged in therapy.  But he was not attending consistently.  And after her initial assessment, Leticia denied needing help with her mental health.  Despite this, Leticia engaged in mental health services, but the efforts were brief.  She attended counseling only a couple of times.  Though Leticia thought she completed at least one of her outpatient programs, the records proved that she was mistaken.  Further, the children fell behind on medical appointments and immunizations.  And one of their older children was "over ten and a half years behind" on his medical appointments.

The department also focused on visits.  Though no trial home visits occurred after the children were removed in September 2023, the parents did attend fully supervised visits with the children.  Since removal, both parents opted for once-a-week visits with the children though they were offered two.  Robbie typically did not have the twins visit when it was just him.  When the parents were in residential

treatment, they did not do visits. Neither parent ever reached unsupervised visits due to department concerns that the parents were still using.

While the department saw that the children were bonded with their parents, the children were also bonded with the foster parents. Both sets of foster parents have expressed that they are willing to adopt the children. The children have been with their respective foster families since the removal from the parents.

In March 2024, the State petitioned to terminate Leticia and Robbie's parental rights to all four younger children. At the termination trial, both Leticia and Robbie testified and contested termination. Neither parent was employed at this time and they both had recently tested positive for drugs. Robbie tested positive in February 2024, and Leticia tested positive in March 2024. Throughout the case, Leticia contended she was sober despite testing positive. She provided evidence of a urinalysis from nine dates between September 2023 and March 2024, but those were from non-random tests when Leticia was in substance-use treatment. The juvenile court did not find her credible.

Further, a department worker testified that the children are "completely different children" in their foster homes where they have a set routine. D.M. wasn't verbal before, but the worker said that "he talks all the time" now.

The guardian ad litem recommended termination. She advised that the children were bonded to their foster parents and that Leticia and Robbie had done "very little to move their case forward." She also noted that the four younger children would still have contact with the older four siblings. Both Leticia and Robbie asked for six more months to work toward reunification. The court denied

their request and terminated their rights under Iowa Code section 232.116(1)(h) (2024). The court also found it was in the children's best interests to terminate.

Robbie and Leticia separately appeal.[3]

## II. Analysis

We review the termination of parental rights under a three-step analysis. *M.W.*, 876 N.W.2d at 219. We must first consider "whether any ground for termination under section 232.116(1) has been established." *Id.* If this ground is met, we turn to the best-interest framework set out in section 232.116(2) and determine whether it supports termination. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). From there, if we conclude that it does, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *M.W.*, 876 N.W.2d at 220.

### A. Father's Termination

We turn first to Robbie's arguments. He claims that the State failed to prove the children could not be returned to his custody at the time of termination. He also contends that termination was not in the children's best interests and requests six more months for reunification. We consider his claims in turn.

---

[3] We review termination-of-parental-rights proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Although we are not bound by the court's findings of fact, we give them weight, especially in assessing the credibility of witnesses. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "The State must prove termination was proper by clear and convincing evidence." *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). "Evidence is considered clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *Id.* (cleaned up) (citation omitted).

### *1. Ground for Termination*

Iowa Code section 232.116(1)(h) allows the court to terminate parental rights if it finds that all of the following have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Robbie contests only the fourth element. Upon our de novo review, we find the State proved that element by clear and convincing evidence. The record shows that the children would be neglected in Robbie's care. While Robbie has been honest about his substance use and has attended treatment, he has never completed treatment. In his care, the children fell behind on immunizations and doctors' appointments. He opted for one hour visits with the children and when Leticia was not around, he declined to spend time with the twins. He has not made a full commitment to stable parenting. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

The children would also not be safe if returned to Robbie. He admitted using substances while caring for the children. Though he has made an effort to provide shelter for his family, Robbie's housing situation cannot accommodate the children. He lives in his sister's two-bedroom trailer, but has eight children to

house. Even considering only the four children subject to this appeal, that living situation is not feasible.

We acknowledge Robbie's effort to reclaim his job at a temporary agency, but we must consider the facts at termination. Robbie was unemployed and unlikely to obtain better housing in the near future. Though financial hardship alone is never a reason to terminate, it can be a factor in termination. *See In re L.R.T.*, No. 03–1229, 2003 WL 22092696, at *1 (Iowa Ct. App. Sept. 10, 2003) (finding "a history of financial instability" and unemployment supported termination); *see also In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) ("Alicia's economic instability and concomitant inability to meet the most basic needs of her children create an appreciable risk of harm to the children and supports the termination of her parental rights."). What's more, since the children's removal, Robbie has not moved from supervised to unsupervised visits. Without this progress, we cannot say that the four children can be safely returned to his custody.

### 2. Children's Best Interests

Next, we turn to the children's best interests, which is the paramount concern in deciding whether to terminate parental rights. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). The court must "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *A.B.*, 975 N.W.2d at 300 (quoting Iowa Code § 232.116(2)). Upon our independent review, we reach the same conclusion as the juvenile court. Termination is in the children's best interests. As mentioned,

Robbie lacks the parenting skills and resources to care for the children. He has struggled with substance use and cannot complete a program. All four children have been with their foster families since September 2023. As the GAL pointed out at the hearing, the children are bonded with their foster families, have a stable routine, and are receiving consistent care. The children are up to date on doctors' visits and immunizations. Both sets of foster parents have expressed interest in adopting the children in their care. The children need permanency. As the department worker pointed out at the hearing, "[t]he longer we drag it out, the harder it is on any child." The children's long-term growth and emotional wellbeing is best served by termination.

### 3. Exceptions

Coming to the last step in our three-step framework, we must consider any exceptions under section 232.116(3) that might make it unnecessary to proceed with termination. Robbie contends termination would be "detrimental to the children due to the bond" with him. *See* Iowa Code § 232.116(3)(c).

At the termination trial, the department acknowledged the children's strong bonds with their parents. But we do not consider that strong bond enough to interrupt the children's consistent care in their foster homes. While we have no doubt that Robbie loves his children, they need stable and consistent attention. *See D.W.*, 791 N.W.2d at 709 (finding termination was warranted due to the parent's inability to provide for the child's welfare in contrast to the child's consistent foster home). For these reasons, we do not find the closeness of the parent-child relationship to be an exception in this case.

#### *4.  Additional Time*

Lastly, we consider Robbie's request for more time to work toward reunification.  "The court may continue the proceedings for an additional six months if the court finds the need for removal will no longer exist at the end of the additional six-month period."  *In re A.G.*, No. 21-0037, 2021 WL 3074505, at *3 (Iowa Ct. App. July 21, 2021) (quoting § 232.104(2)(b)) (cleaned up).  We consider that "[a] useful marker for a parent's future performance is that parent's past behavior."  *In re L.M.*, No. 20-0185, 2020 WL 2065952, at *2 (Iowa Ct. App. Apr. 29, 2020).  True, the record proves Robbie has tried many times to remain sober.  But he has not finished his programs.  He stopped attending therapy and was kicked out of a treatment program for failing to complete milestones.  The children cannot wait for Robbie to become a present parent.  We cannot find that the need for removal will no longer exist at the end of an additional six months.  Thus, we deny Robbie the requested delay of permanency.

### B.  Mother's Termination

We now turn to Leticia's argument that the department hindered her reunification with the children in its lack of support and that "without a positive report or recommendation the Court would not likely find that the children could be returned home."  The State argues that Leticia failed to preserve error on this claim.  We agree.

Leticia contends that she preserved error by resisting termination.  But she did not contest the State's proof that the children could not be returned to her at the time of the trial.  The State asked Leticia: "Those eight kids couldn't be returned today in the trailer, could they?"  She answered: "I don't think so.  I can make it

work, but I don't think it will be fit for them." She now argues that the court should have found the children could have been returned home. That argument was not preserved. Leticia conceded that the children could not be returned to her. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases.").

Leticia also argues that the department "made a habit of not believing [her] and dismissing her efforts." But for this issue, Leticia cites no authority and fails to advance a specific claim beyond her general concern with the department. Without such authority or direction, we consider her argument waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also C.B.*, 611 N.W.2d at 492 ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."). Thus, we must affirm.

**AFFIRMED ON BOTH APPEALS.**